**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| QUEST NETTECH CORPORATION, | § § | |
| Plaintiff, | § | C.A. No. 2:19-cv-00118-JRG |
| v. | § § | JURY TRIAL DEMANDED |
| APPLE INC., | § § | |
| Defendant. | § § | |

**DEFENDANT APPLE INC.'S MOTION TO
<u>TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................1

    A. Litigation Status ..........................................................................................................1

    B. The Accused Products.................................................................................................2

    C. The Parties, Their Locations, Potential Party Witnesses, and Evidence .................2

    D. Material Third-Party Witnesses are Located in California and Elsewhere Outside of Texas ..........................................................................................................4

III. LEGAL STANDARD..............................................................................................................5

IV. ARGUMENT............................................................................................................................6

    A. NetTech Could Have Brought This Action in the Northern District of California .....................................................................................................................6

    B. The Private Interest Factors Overwhelmingly Favor Transfer ..............................6

        1. The Relative Ease of Access to Sources of Proof Factor Favors Northern California...................................................................................6

        2. The Availability of Compulsory Process to Secure the Attendance of Witnesses Factor Favors Northern California ........................................8

        3. The Cost of Attendance for Willing Witnesses Factor Also Favors Northern California...................................................................................9

        4. The "All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive" Factor Slightly Favors Transfer .......................................................................................................11

    C. The Public Interest Factors Favor Transfer ...........................................................11

        1. The Northern District of California's Local Interest in Deciding This Case Favors Transfer ........................................................................11

        2. Court Congestion is Neutral...................................................................12

        3. Familiarity with the Governing Law and Conflicts of Law are Neutral.......................................................................................................12

    D. The Court Should Not Give Deference to NetTech's Choice of Venue................12

V. CONCLUSION......................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Acer Am. Corp.*,
   626 F.3d 1252, 1256 (Fed. Cir. 2010) ................................................................................8

*In re Apple Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) ...................................................................................10

*Aten Int'l Co. Ltd. v. Emine Tech. Co., Ltd.*,
   261 F.R.D. 112 (E.D. Tex. 2009) .....................................................................................11

*Brackett v. Hilton Hotels Corp.*,
   619 F. Supp. 2d 810 (N.D. Cal. 2008) ................................................................................9

*Evolutionary Intelligence, LLC v. Apple, Inc.*,
   No. 6:12-CV-00783, 2013 WL 8360309 (E.D. Tex. Aug. 27, 2013) .................................7

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ................................................................................. passim

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ..............................................................................................................8

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ..........................................................................................8

*In re Horseshoe Entm't*,
   337 F.3d 429 (5th Cir. 2003) ..............................................................................................6

*Network Prot. Sciences, LLC v. Juniper Networks, Inc.*,
   No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ................................6

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir 2009) ....................................................................................6, 12

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
   No. 6:09-CV-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010) .....................................7

*Personalweb Techs., LLC v. Yahoo!, Inc.*,
   No. 6:12-CV-658, 2014 WL 1689046 (E.D. Tex. Feb. 12, 2014) ......................................9

*Plant Equip. Inc. v. Intrado Inc.*,
   No. 2-09-CV-395-TJW, 2010 WL 2465358 (E.D. Tex. June 16, 2010) ............................7

*Regent Mkts. Grp., Ltd. v. IG Mkts., Inc.*,
   No. 2:10-CV-42, 2011 WL 1135123 (E.D. Tex. Mar. 25, 2011) .......................................8

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014)..................................................................................................6

*Transunion Intelligence L.L.C. v. Search Am., Inc.*,
    No. 2:10-CV-130, 2011 WL 1327038 (E.D. Tex. Apr. 5, 2011)............................................11

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)....................................................................................5, 6, 12

*Vantage Point Tech., Inc. v. Apple Inc.*,
    No. 2:13-CV-989 (E.D. Tex. Sept. 3, 2014), ECF No. 24......................................................12

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .......................................................................5, 9, 10, 11

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) ................................................................5, 10, 11, 12

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    No. 2:10-CV-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ......................................8

*In re WMS Gaming, Inc.*,
    564 F. App'x 579 (Fed. Cir. 2014) .........................................................................................10

**STATUTES**

28 U.S.C. § 1404(a) ........................................................................................................... passim

**RULES**

Fed. R. Civ. P. 12(b)(6).................................................................................................................1

**I.       INTRODUCTION**

Apple respectfully requests that the Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  The public and private interest factors favor transfer because the Plaintiff Quest NetTech, Corp. ("NetTech")—asserting an expired patent owned for decades by a New York corporation—has no genuine ties to this District and because the Northern District of California, where Apple is headquartered and the accused products are designed and developed, is clearly more convenient for the significant majority of the party witnesses in this case.  Known third-party witnesses—such as the sole named inventor and prior artists—also are located in California.  In contrast, no known witnesses are located in this District.

Judicial efficiency is not achieved by maintaining the case in this District because this is the first time NetTech has filed a lawsuit on the asserted patent.  Thus, in this case, no factors favor maintaining the case in the Eastern District of Texas and several factors favor transferring the case to the Northern District of California, including relative ease of access to sources of proof, convenience of the parties, availability of compulsory process to secure attendance of witnesses, convenience to and cost for the witnesses to travel and attend trial, and the Northern District of California's local interest in trying the case.  For all of these reasons, and those further detailed below, Apple respectfully requests that the Court grant this motion.

**II.      BACKGROUND**

   **A.      Litigation Status**

On April 12, 2019, NetTech filed its Complaint in this District, alleging that Apple infringes U.S. Patent No. RE 38,137 (the "'137 patent" or "Asserted Patent").  Pl.'s Compl. for Patent Infringement (ECF No. 1).  NetTech filed its First Amended Complaint ("FAC") asserting the same patent on the same day.  Pl.'s FAC (ECF No. 5).  Apple has not filed an Answer and is contemporaneously moving to dismiss NetTech's FAC.  Def.'s Mot. to Dismiss indirect and willful infringement claims pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 19).  No discovery has yet taken place, and NetTech has not yet served its infringement contentions.  NetTech has not sued any other parties for infringement of the '137 patent.

### B.     The Accused Products

NetTech accuses the "Apple Pay functionality" present in "at least the iPhone 6" (the "Accused Products") of infringing the Asserted Patent. *See* FAC, ¶ 12; *see also id*. ¶ 8 ("The Accused Devices, together with Apple's software components such as, but not limited to, Apple Pay, iOS 8, iOS 9, and/or iOS 10 are configured to interact with Apple's servers which provide the Apple Pay service . . . ."). Apple does not sell Apple Pay as a stand-alone product. Declaration of Michael Jaynes ¶ 7 ("Jaynes Decl.")[1]. Apple Pay is part of Apple Wallet and is one of many features that was available when a customer purchased an iPhone 6 with the Apple iOS 8 or 9 operating system. *Id.*

### C.     The Parties, Their Locations, Potential Party Witnesses, and Evidence

Apple has significant ties to the Northern District of California, and as relevant to this case, Apple's witnesses and evidence are located in that District. For more than four decades, Apple has maintained its headquarters and primary research and development facilities in the Northern District of California, where it employs more than 30,000 people. *Id*. ¶ 5. Apple's management and primary research and development facilities are in or near Cupertino. *Id*. Apple's employees knowledgeable about the Accused Products (as Apple understands NetTech's infringement allegations) and the design and operation of the relevant aspects of the Accused Products, including their research and development, work at facilities in Cupertino and the surrounding area. *Id.* ¶ 8.

Specifically, Apple's primary research, design, and development activities related to Apple Pay occurred in or near Cupertino, and the engineers associated with those projects (and the electronic and paper records of their work) are located in or near Cupertino. *Id.* ¶¶ 8, 10-12, 14. For example, the engineering teams at Apple led by Glen Steele, David Brudnicki, and Chris Sharp who have knowledge of the accused Apple Pay technology are overwhelmingly located in the Northern District of California. *Id*. ¶¶ 10-12.

Glen Steele is an Engineering Manager at Apple and leads the Apple Wallet Engineering team for iOS, the operating system for the Accused Products. *Id*. ¶ 10. Mr. Steele and his team

---

[1] The Declaration of Michael Jaynes is filed concurrently with this Motion.

are responsible for developing, maintaining, and updating the device-side iOS source code for Apple Wallet. *Id*. Mr. Steele and the members of his team with knowledge about the design and development of the Apple Wallet iOS source code are all located in the Northern District of California. *Id*.

Chris Sharp is the Director of Engineering in the Apple Pay Server Engineering group. *Id*. ¶ 12. Mr. Sharp has been involved in the design and development of Apple Wallet, and its predecessor product called Apple Passbook, since its inception around 2011, and he wrote much of the source code for the original version of the server-side software utilized by the Apple Wallet application. *Id*. Mr. Sharp's team is responsible for developing, updating, and maintaining the server-side source code for Apple Wallet. *Id*. The servers are not located in EDTX. *Id*. With four exceptions, Mr. Sharp and his team are located in the Northern District of California. *Id*. The remaining four individuals are located outside the United States. *Id*.

David Brudnicki leads the Apple Pay Product Architecture team at Apple. *Id.* ¶ 11. Mr. Brudnicki's team interfaces with both internal Apple personnel (*e.g.*, the Apple Wallet engineering teams) and external business partners (*e.g.*, financial institutions) to ensure that Apple Wallet satisfies business, technical, and regulatory requirements. *Id*. Mr. Brudnicki and all the members of his team are located in the Northern District of California. *Id*.

Baris Cetinok is the Senior Director of Product Marketing at Apple with product marketing responsibilities for Apple Wallet and Apple Pay. *Id*. ¶ 13. Mr. Cetinok and his team members with knowledge of Apple Wallet product marketing are located in the Northern District of California. *Id*.

The relevant documents, source code, and other evidence regarding the operation, structure, function, marketing, and sales of the Accused Products are located in the Northern District of California. *Id.* ¶¶ 9, 14. Engineering, design, operation, marketing, sales, pricing, and finance decisions for Apple also occur in the Northern District of California. *See id.* ¶¶ 5, 10-13, 16.

Apple has no witnesses or documents in this District that are relevant to this case. Other than retail stores in Plano and Frisco, which were open on the day this suit was filed but are no longer in operation, Apple has no facilities in this District. *Id.* ¶¶ 19-20. Although Apple has non-retail offices in Austin and Lockhart (in the Western District of Texas) and Dallas and Garland (in the Northern District of Texas), the facilities, employees, and business records at those locations have nothing to do with this lawsuit (and none are in this District). *Id.* ¶ 21.

Although NetTech is a Texas LLC, it is a wholly-owned subsidiary of Quest Patent Research Corporation ("QPRC"), a Delaware corporation with its principal place of business located in Rye, NY. *See* Ex. 1[2], QPRC Annual Report. Moreover, according to PTO assignment records and QPRC's 2018 Annual Report, the sole Asserted Patent was owned by Wynn Technologies, Inc. (another wholly-owned subsidiary of QPRC also based in New York) from November 29, 2000 until April 11, 2019. *Id.* at 5; Ex. 2, PTO Assignment dated November 29, 2000. On April 11, 2019—the day before this suit was filed—NetTech merged with Wynn Technologies, Inc., with NetTech being the surviving entity. Ex. 1, QPRC Annual Report. NetTech is not known to employ anyone in the state of Texas. And other than litigation, NetTech does not appear to conduct any business in Texas.

### D.   Material Third-Party Witnesses are Located in California and Elsewhere Outside of Texas

Apple is aware of third-party witnesses in and near the Northern District of California who are expected to possess highly relevant and material information regarding the Asserted Patent. The location listed on the Asserted Patent for the sole named inventor—Sol H. Wynn—is Elk Grove, California which is less than a 100-mile drive from San Francisco. Ex. 3, Google Maps printout.

Although Apple's prior art search is ongoing, at least two inventors on a strong prior art reference are identified as being located in the Northern District of California. In particular, U.S.

---

[2] All exhibits cited in this Motion are attached to the Declaration of Travis Jensen filed concurrently with this Motion.

4

Pat. No. 4,900,903 lists Christopher B. Wright as located in San Francisco and Stephen Bristow as located in Los Altos Hills.

The prosecuting attorney for the Asserted Patent was Max Moskowitz who listed his business address in New York City.  Ex. 4, Reissue Application Transmittal Letter dated January 11, 2001.  As of May 27, 2019, the PTO Office of Enrollment and Discipline listed Mr. Moskowitz as maintaining a New York City office.  Ex. 5, PTO OED printout.

### III.     LEGAL STANDARD

Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  In patent cases, the law of the regional circuit in which the case was originally brought, here the Fifth Circuit, governs the analysis of a transfer motion. *In re Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The movant must first show that the case could have been brought in the proposed transferee district.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  If so, the court must weigh the relative convenience of the transferee district and the original district. This process involves the analysis of several private and public interest factors.  *Id.*  The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*") (citations omitted); *TS Tech*, 551 F.3d at 1319 (applying Fifth Circuit law).

The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Volkswagen II*, 545 F.3d at 315 (citations omitted); *TS Tech*, 551 F.3d at 1319.  "The convenience of the witnesses is probably the single

5

most important factor in a transfer analysis." *Network Prot. Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *6 (E.D. Tex. Jan. 23, 2012) *citing In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). "The Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer . . . ." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir 2009) (Fifth Circuit law).

The Federal Circuit, applying Fifth Circuit law, has found that transfer is appropriate even where "[t]he analysis may not show that the transferee forum is *far* more convenient" because "that is not what is required." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014). The question instead is whether the transferee forum is "clearly more convenient." *Id.*; 28 U.S.C. § 1404(a).

## IV. ARGUMENT

No factors favor the Eastern District of Texas as a forum, and many favor the Northern District of California. Thus, this action should be transferred to the Northern District of California, which is "clearly more convenient." *Id.*

### A. NetTech Could Have Brought This Action in the Northern District of California

The threshold determination for a § 1404(a) transfer analysis is whether the action could have been filed in the transferee district. *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Apple is a California corporation, headquartered in the Northern District of California, and, thus, NetTech could have sued Apple in the Northern District of California.

### B. The Private Interest Factors Overwhelmingly Favor Transfer

As explained below, all of the private interest factors overwhelmingly support the conclusion that the Northern District of California is the clearly more convenient forum for this action.

#### 1. The Relative Ease of Access to Sources of Proof Factor Favors Northern California

This factor favors transfer because relevant documents and key witnesses with knowledge relating to the design and development of the Accused Products, as well as those relating to the

marketing, sales, pricing, and finance decisions for these products, are located in the Northern District of California. Courts have recognized that, as is the case here, the accused infringer will typically have the bulk of the relevant evidence. *See On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-CV-390, 2010 WL 3855520, at *4 (E.D. Tex. Sept. 30, 2010) ("[T]ypically in a patent case, the defendant has the majority of relevant documents."); *Evolutionary Intelligence, LLC v. Apple, Inc.*, No. 6:12-CV-00783, 2013 WL 8360309, at *5 (E.D. Tex. Aug. 27, 2013); *Genentech*, 566 F.3d at 1345 ("Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (citation omitted). "Even in the age of electronic discovery, considerations of physical evidence remain meaningful in a § 1404(a) analysis." *Plant Equip. Inc. v. Intrado Inc.*, No. 2-09-CV-395-TJW, 2010 WL 2465358, at *3 (E.D. Tex. June 16, 2010).

Apple has significant ties to the Northern District of California. Apple is headquartered in Cupertino, California. Jaynes Dec. ¶ 3. Apple's management and primary research and development facilities are in or near Cupertino. *Id.* ¶ 5. Apple's primary research, design, and development activities related to the Accused Products and the accused Apple Pay functionality occurred in or near Cupertino, and the engineers associated with those projects (and the electronic and paper records of their work) are located in or near Cupertino. *Id.* ¶¶ 8, 10-12, 14. More specifically, as discussed *supra* Section II.C, Chris Sharp, David Brudnicki, Glen Steele, and their respective Apple Pay engineering teams are all located in the Northern District of California. *Id.* ¶¶ 10-12. So, too, is Baris Cetinok and his team which is responsible for Apple Pay product marketing. *Id.* ¶ 13; *see also* Section II.C *supra*.

All relevant witnesses that Apple has been able to identify to date (to the extent Apple understands NetTech's infringement allegations) are located in the Northern District of California. *Id.* ¶¶ 10-13, 15-17. Operation, marketing, sales, pricing, and finance decisions for Apple also occur in California. *Id.* ¶¶ 5, 16. The relevant documents and evidence regarding the operation, structure, function, marketing, and sales of the Accused Products are also located in or near Cupertino and the surrounding area. *Id.* ¶¶ 14, 16.

Other than maintaining this lawsuit, NetTech does not appear to have any actual business activities, let alone any in this District. NetTech is owned by a Delaware corporation with a principal place of business in New York. Ex. 1, QPRC Annual Report. The sole Asserted Patent was owned by a different New York-based subsidiary of QPRC until the day before NetTech filed this lawsuit against Apple. *See* Section IV.B.2 *supra*. As courts in this District have observed, "[t]he Federal Circuit has made clear that recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis." *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *3 (E.D. Tex. Feb. 15, 2012). In this vein, the Supreme Court has cautioned that courts must guard against efforts to manipulate our nation's laws governing jurisdiction and venue. *Hertz Corp. v. Friend*, 559 U.S. 77, 85-86 (2010). NetTech has not pointed to a single relevant document or witness in this District with unique, relevant information. *See generally* Pl.'s FAC.

Additionally, there are third-party witnesses located in the Northern District of California. *See* Section IV.B.2 *infra*.

Given that the critical mass of evidence is in the proposed transferee district, and there is no relevant evidence in this District, this factor strongly favors transfer. *See, e.g., In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (holding sources of proof factor favored transfer when a significant portion of the evidence was located in the proposed transferee district).

        **2.    The Availability of Compulsory Process to Secure the Attendance of Witnesses Factor Favors Northern California**

"The venue's ability to compel testimony through subpoena power is . . . an important factor" and may be "invaluable." *Id.* at 1255. This factor will weigh the heaviest in favor of transfer when a transferee venue, like the Northern District of California here, has subpoena power over important third-party witnesses for both depositions and trial (termed "absolute subpoena power"). *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009); *see also Regent Mkts. Grp., Ltd. v. IG Mkts., Inc.*, No. 2:10-CV-42, 2011 WL 1135123, at *3 (E.D. Tex. Mar. 25, 2011) (noting that the availability of compulsory process "will weigh more heavily in favor of transfer when more non-party witnesses reside within the transferee venue").

Here, material third-party witnesses are located in, and are subject to the absolute subpoena power of, the Northern District of California. Notably, the sole inventor is listed as being located in Elk Grove, California and is subject to the subpoena power of the Northern District of California. *See Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) ("The California district courts have the power to subpoena witnesses throughout the state . . . .").

Moreover, material third-party witnesses such as Christopher B. Wright (located in San Francisco), and Stephen Bristow (located in Los Altos Hills), each of whom authored or created relevant prior art, are located in the Northern District of California. *See* U.S. Pat. 4,900,903.

Conversely, Apple is not aware of a single third-party witness that is located in this District or within the subpoena power of this Court.

Accordingly, because third-party witnesses with relevant, material knowledge are subject to the subpoena power of the Northern District of California, while no such third-party witnesses have been identified in this District, this factor strongly favors transfer. *See Personalweb Techs., LLC v. Yahoo!, Inc.*, No. 6:12-CV-658, 2014 WL 1689046, at *11 (E.D. Tex. Feb. 12, 2014) (this factor favors transfer when "there are no known third-party witnesses in this District and several potential third-party witnesses in the Northern District of California").

### 3. The Cost of Attendance for Willing Witnesses Factor Also Favors Northern California

The "single most important factor in transfer analysis" is the convenience to and cost for the witnesses to travel and attend trial. *Genentech*, 566 F.3d at 1343. The Fifth Circuit explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 204, 205. The Fifth Circuit adopted a "100-mile rule" to assist with this analysis. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 204, 205. The "100 mile rule" favors

9

transfer (with differing degrees) if the transferee venue is a shorter distance from witnesses than the transferor venue. *See Volkswagen II*, 545 F.3d at 317. Where no potential witnesses reside in the plaintiff's chosen forum, favoring the court's location as central to all of the witnesses is improper. *Genentech*, 566 F.3d at 1344.

As such, this factor favors transfer here because no known witnesses are located in this District. And as discussed above, Apple's relevant employees work in the Northern District of California. *See* Sections II.C, IV.B.1 *supra*. Trial in this District would require greater travel time, and therefore impose substantially greater inconvenience on the vast majority of witnesses, including the Apple employees and the plaintiff's sole named inventor. As noted in *Volkswagen I*, each of Apple's witnesses would have to expend time to travel from California, with overnight stays almost certain, and incur time away from their employment and families. In contrast, Apple is not aware of any witnesses who reside in this District for whom trial would be more convenient than in the Northern District of California. Accordingly, the burden on and cost of attendance for willing witnesses (party and non-party) would be significantly less if the case were transferred to the Northern District of California.

The facts in this lawsuit are similar to those in *In re Apple Inc.*, 581 F. App'x 886 (Fed. Cir. 2014), where the Federal Circuit held that the district court erred in denying a motion to transfer where "Apple identified at least eight prospective party witnesses in the transferee venue with relevant material information, while [the plaintiff] failed to identify a single prospective witness in the Eastern District of Texas." *Id*. at 889; *see also In re WMS Gaming, Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014) (finding that the significant incurred expenses and lost productivity of the defendant's employees weighed strongly in favor of transfer and vacating the district court's order denying transfer). Accordingly, because key prospective party witnesses with relevant, material knowledge are located in the Northern District of California, while no such witnesses have been identified in this District, this factor favors transfer.

### 4. The "All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive" Factor Slightly Favors Transfer

This case is in the earliest of stages. Apple has not yet filed an Answer, no discovery has taken place, and NetTech has not yet served its infringement contentions. *See supra* Section II.A. Thus, no practical problems exist that would deter this Court from transferring the case to the Northern District of California. *See Transunion Intelligence L.L.C. v. Search Am., Inc.*, No. 2:10-CV-130, 2011 WL 1327038, at *5 (E.D. Tex. Apr. 5, 2011) ("Judicial economy weighs against transfer when the Court already has familiarity with the case's factual issues. This factor is neutral in view of the limited discovery that has taken place to date."). Where, as here, no discovery has taken place and the case is in the earliest of stages, this factor also slightly favors transfer.

### C. The Public Interest Factors Favor Transfer

#### 1. The Northern District of California's Local Interest in Deciding This Case Favors Transfer

The Northern District of California has a strong local interest in this matter because it is the location of Apple's headquarters, where the Accused Products were designed and developed, and where Apple's relevant employees are based. The Fifth Circuit has highlighted the importance of considering the districts' respective local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (citation omitted). Interests that "could apply virtually to any judicial district or division in the United States," such as nationwide sale of the allegedly infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318.

Here, the interests of this District in resolving this dispute could indeed apply to any judicial district in the country. Apple's two retail stores previously located in Plano and Frisco, which are no longer in operation, are insufficient to create a local interest when sales are made at retail stores nationwide and there are many more retail stores in the Northern District of California. Jaynes Decl. ¶¶ 19-20; *see also Volkswagen II*, 545 F.3d at 318; *Aten Int'l Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 126 (E.D. Tex. 2009) ("[T]he mere fact that an accused product is available in this district is not a particularized interest that weighs against transfer."). This District's

resources should be preserved for disputes with genuine ties to this District by transferring this case to the Northern District of California, which has a particularized local interest in it. Thus, this factor favors transfer.

### 2. Court Congestion is Neutral

The median times to trial in patent cases in the Northern District of California and this District are at 28.3 months and 24.6 months, respectively. Ex. 6, Docket Navigator Jury Trial Statistics. Thus, this factor is neutral.

### 3. Familiarity with the Governing Law and Conflicts of Law are Neutral

The last two factors are neutral. NetTech's FAC does not raise issues that implicate conflict of laws or foreign law, much less in a way that would cause one district to be preferable as compared to the other. Further, this case is governed by federal patent law, which the judges in both districts are equally qualified to apply. *See TS Tech*, 551 F.3d at 1321.

### D. The Court Should Not Give Deference to NetTech's Choice of Venue

As the Federal Circuit explained in *Nintendo*, the Fifth Circuit does not give special weight to the plaintiff's choice of venue where it has no relationship to the parties or the case. *See* 589 F.3d at 1200. Rather, the plaintiff's choice of venue contributes to the defendant's burden to prove the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315. This Court has previously found on multiple recent occasions that the Northern District of California is a "clearly more convenient" forum for Apple to litigate than this District, and the same reasoning applies to this case. *See, e.g.*, Order Transferring Case at 2-3, *Vantage Point Tech., Inc. v. Apple Inc.*, No. 2:13-CV-989 (E.D. Tex. Sept. 3, 2014), ECF No. 24.[3]

---

[3] The Eastern District of Texas has granted Apple's request to transfer to the Northern District of California in numerous other cases: *Alert Signal Intellectual Prop., LLC v. Apple Inc.*, No. 2:18-cv-177-JRG (E.D. Tex. Aug. 9, 2018) (D.I. No. 25); *Porto Tech. Co., Ltd. v. Apple Inc.*, No. 2:15-cv-00457 (E.D. Tex. March 11, 2016); *Hall Data Sync Techs. LLC v. Apple Inc.*, No. 2:15-cv-00006 (E.D. Tex. June 9, 2015); *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13-CV-919- JDL, 2014 WL 6847569 (E.D. Tex. Nov. 7, 2014); *Rembrandt Patent Innovations, LLC et al v. Apple Inc.*, No. 2:14-cv-00015 (E.D. Tex. Oct. 27, 2014) (D.I. No. 88); *MemSmart Semiconductor Corp. v. Apple Inc.*, No. 2:13-CV-00518 (E.D. Tex. April. 21, 2014) (D.I. No. 32); *Personalweb Techs., LLC v. Yahoo!, Inc.*, No. 6:12-CV-658, 2014 WL 1689046 (E.D. Tex. Feb. 12, 2014); *Touchscreen*

## V. CONCLUSION

For all the reasons set forth above, Apple respectfully requests that this Court transfer this action to the Northern District of California.

Dated: June 20, 2019                                    Respectfully submitted,

*/s/ Travis Jensen*
Claudia Wilson Frost – Lead Counsel
State Bar No. 21671300
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
609 Main Street, 40th Floor
Houston, TX 77002
Tel: (713) 658-6400
Fax: (713) 658-6401
cfrost@orrick.com

Travis Jensen
CA Bar No. 259925
**ORRICK, HERRINGTON, & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Tel: (650) 614-7400
Fax: (650) 614-7401
tjensen@orrick.com

Tyler S. Miller
NY State Bar No. 5122262
**Orrick, Herrington & Sutcliffe Llp**
51 West 52nd Street
New York, NY 10019
Telephone: 212.506.5338
Facsimile: 212.506.5151
tmiller@orrick.com

---

*Gestures, LLC v. Apple Inc.*, No. 6:12-cv-00262 (E.D. Tex. May 24, 2013) (D.I. No. 22); *Adaptix, Inc. v. Apple Inc.*, No. 6:13-CV-28, 2013 WL 8358955 (E.D. Tex. Apr. 11, 2013); *Droplets, Inc. v. Amazon.com, Inc.*, No. 2:11-CV-392, 2012 WL 3578605 (E.D. Tex. June 27, 2012); *Hopewell Culture & Design, LLC v. Adobe Systems Inc.*, No. 2:10-CV-00586 (E.D. Tex. Jan. 9, 2012) (D.I. No. 139); *Positive Techs. Inc. v. Sony Elecs. Inc.*, No. 2:10-CV-263 (E.D. Tex. April 12, 2011) (D.I. No. 137); *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 699 (E.D. Tex. 2011); *Affinity Labs of Tex., LLC v. Nike, Inc.*, No. 2:10-CV-00054 (E.D. Tex. Nov. 4, 2010) (D.I. No. 68); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-CV-448, 2010 WL 2771842 (E.D. Tex. July 13, 2010); *Harvey v. Apple Inc.*, No. 2:07-CV-327, 2009 WL 7233530 (E.D. Tex. Oct. 8, 2009); *Prust v. Apple Inc.*, No. 2:09-cv-00092 (E.D. Tex. Oct. 7, 2009) (D.I. No. 37).

                Melissa Richards Smith
                State Bar No. 24001351
                **GILLAM & SMITH, LLP**
                303 S. Washington Ave.
                Marshall, TX 75670
                Tel: 903.934.8450
                Fax: 903.934.9257
                melissa@gillamsmithlaw.com

                **ATTORNEYS FOR DEFENDANT APPLE INC.**

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Apple Inc. has complied with the meet and confer requirement in Local Rule CV-7(h) and that the accompanying motion is opposed. I further certify that counsel for Apple Inc., Claudia Frost, communicated with counsel for Plaintiff, Fred Fabricant, on June 19, 2019, in an attempt to reach an agreement regarding Apple's Motion to Transfer.

/s/ Travis Jensen<br>Travis Jensen

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically on June 20, 2019, pursuant to Local Rule CV-5 and has been served on all counsel who have consented to electronic service. Any other counsel of record will be served by first class U.S. mail on this same date.

/s/ Travis Jensen<br>Travis Jensen