# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| QUEST NETTECH CORPORATION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:19-CV-00118-JRG |
| APPLE, INC., | § § § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Apple, Inc.'s ("Apple") Motion to Transfer Venue Under 28 U.S.C. § 1404(a) (the "Motion"). (Dkt. No. 20.) In the Motion, Apple requests that this Court transfer the above-captioned case under 28 U.S.C § 1404(a) from the Eastern District of Texas to the Northern District of California. Having considered the Motion and for the reasons set forth herein, the Court is of the opinion that the Motion should be and hereby is **DENIED**.

## I. BACKGROUND

### A. The Asserted Patent

This case involves one patent—United States No. RE 38,137 (the "'137 Patent") issued on June 10, 2003 with a filing date of September 28, 1995. The '137 Patent is entitled "Programmable Multiple Company Credit Card System." The sole inventor of the '137 Patent is Sol H. Wynn, who is a resident of Elk Grove, California (a town less than 100 miles from San Francisco)[1]. (Dkt. No. 20 at 4; Dkt No. 33 at 3.) In addition, the prosecuting attorney that helped Mr. Wynn secure the '137 Patent is a Mr. Max Moskowitz, who has a listed business address in New York. (Dkt. No. 20 at 5.) Plaintiff Quest NetTech ("NetTech") became the sole and exclusive owner of the

---

[1] According to a declaration by Mr. Jon Scahill (CEO of NetTech), Mr. Wynn has indicated that he is willing to voluntarily travel to the Eastern District of Texas. (Dkt. No. 33-2 at ¶ 11.).

'137 Patent when it merged with Wynn Technologies, Inc. on April 11, 2019. (*Id*. at 4.) NetTech has not sued any other parties for infringement of the '137 Patent. (*Id.* at 1.)

### B. The Instant Lawsuit

NetTech filed its complaint against Apple on April 12, 2019, (the "Complaint") asserting that Apple's "Apple Pay functionality" implemented through Apple Wallet on such devices as the iPhone 6 with Apple iOS 8 or 9 (the "Accused Products") infringes the '137 Patent. (Dkt. No. 5 at ¶ 12; Dkt. No. 20 at 2.) Apple has yet to file an Answer but has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, in addition to this Motion to Transfer Venue Under 28 U.S.C. § 1404(a). (*See* Dkt. No. 19; Dkt. No. 20.)

### C. Quest NetTech Corporation

NetTech is a limited liability company organized and existing under the laws of Texas. (Dkt. No. 33 at 2.) NetTech's principal place of business is located in this District in Marshall, Texas. (*Id*.) Over the last decade, NetTech has been involved in numerous patent disputes in this District since its incorporation in 2009. (*Id*.) The sole manager of NetTech is Jon Scahill, a New York resident who regularly travels to this District on business for NetTech. (*Id*.) According to NetTech, Mr. Scahill will be a primary witness in this case as he "possesses highly relevant knowledge regarding the business of NetTech, the valuation of the '137 Patent, secondary considerations, and the licensing efforts of NetTech." (*Id*.) Furthermore, according to NetTech, all of its documents are located in this District. (*Id*.) NetTech, however, has no fixed employees whose designated place of work is within this District, though such is no longer uncommon in today's world of tele-working. (Dkt. No. 20 at 4.)

**D. Apple, Inc.**

Apple is a California corporation with its principal place of business in Cupertino, California, in the Northern District of California. (Dkt. No. 1 at ¶2.) According to Apple, Apple's primary research and development facilities are located in the Northern District of California. (Dkt. No. 20 at 2.) In addition, Apple employs several thousand people in the Northern District of California. (*Id.*) Furthermore, according to Apple, certain of its employees who are knowledgeable as to the Accused Products are located in and around the Cupertino area.[2] (*Id.*) Finally, according to Apple, the relevant documents, source code, and other evidence that relate to the Accused Products are located in the Northern District of California. (*Id.*)

Apple no longer has facilities in the Eastern District of Texas though it had two retail stored in this District when the complaint was filed.[3] (*Id.* at 4.) Apple, however, presently has facilities (both retail and non-retail) in other districts in Texas. (Dkt. No. 33 at 4.) Apple has a campus in Austin, Texas—which is in the Western District of Texas—with over 6,200 employees where Apple conducts "a broad range of functions including engineering, R&D, operations, finance, sales and customer support." (*Id.*) In addition, Apple operates facilities in Dallas and Garland—which are located in the Northern District of Texas. (*Id.*) According to NetTech (and based on LinkedIn search results), there are several Apple employees that work on the Apple Pay systems that work

---

[2] For example, Mr. Glen Steele, who leads the Apple Wallet Engineering team for iOS, is located in the Northern District of California. (Dkt. No. at 2–3.) In addition, Mr. Chris Sharp, who is the Director of Engineering in the Apple Pay Server Engineering group and who was involved in the design and development of Apple Wallet, is also located in the Northern District of California. (*Id.* at 3.) Further, Mr. David Brudnicki the head of the Apple Pay Product Architecture team at Apple is also located in the Northern District of California. (*Id.*) Also, Mr. Baris Cetinok, the Senior Director of Product Marketing at Apple with responsibilities for Apple Wallet and Apple Pay, is also located in the Northern District of California. (*Id.*)

[3] At the time this suit was filed, Apple had two retail stores in the Eastern District of Texas. However, these retail stores were closed the day after this suit was filed.

in Apple's Austin campus. (*Id.*) Apple, however, disputes that these employees have information that would be relevant to this case.[4]

## II. LEGAL STANDARD

If venue in the district in which the case is originally filed is proper, the court may nonetheless transfer a case based on "the convenience of parties and witnesses" to "any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The threshold inquiry when analyzing eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*]. As such, to prove that transfer is proper, the movant must establish that, as of the time of filing, each party "would have been amenable to process in . . . the transferee court" and that "venue as to all [parties] would have been proper [there]." *See Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987); *accord Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960).

Once this initial threshold has been met, courts determine whether the case should be transferred by analyzing various public and private factors. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *accord In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (*citing Piper Aircraft Co. v.*

---

[4] Apple claims that it has confirmed with the employees in Austin that NetTech named that these employees had "no involvement in the design, development, implementation, or marketing of Apple Pay." (Dkt. No. 43 at 2–3.)

4

*Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman*, 363 U.S. at 343. Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) [hereinafter *Volkswagen II*].

To prevail on a motion to transfer under § 1404(a), the movant must show that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* at 315; *accord In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) (holding that a movant must "meet its burden of demonstrating [] that the transferee venue is 'clearly more convenient.'") (internal citation omitted). Absent such a showing, plaintiff's choice of venue is to be respected. *Volkswagen II*, 545 F.3d at 315. When deciding a motion to transfer under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See Sleepy Lagoon, Ltd., v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18–19 (D.D.C. 2008).

### III. DISCUSSION

**A. This Action Could Have Been Filed in the Northern District of California.**

As a threshold matter, it must be determined whether NetTech could have initiated this suit in the Northern District of California. *See Volkswagen I*, 371 F.3d at 203. Apple is a California corporation with its headquarters in the Northern District of California. The Court finds that this

action could have properly been filed in the Northern District of California. As such the threshold requirement for transfer under § 1404(a) has been satisfied. *See* 28 U.S.C. § 1400(b).

**B. The Private and Public Interest Factors do not Collectively Weigh in Favor of Transfer.**

    1) <u>Private Transfer Factors</u>

        *a) Relative Ease of Access to Sources of Proof*

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered. *See Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Apple must show that transfer to the Northern District of California will result in more convenient access to sources of proof. *See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).

Since Apple's headquarters and primary research and development facilities are in the Northern District of California, Apple alleges that all the relevant documents and evidence relating to the "operation, structure, function, marketing, and sales of the Accused Products" are located in the Northern District of California. (Dkt. No. 20 at 7.) Apple also argues that this factor materially favors transfer because usually the defendant has the majority of the documents. *(Id.* (*citing On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-CV-390, 2010 WL 3855520, at *4 (E.D. Tex. Sept. 30, 2010).) In addition, Apple alleges that some potentially relevant third-party witnesses (e.g., two inventors named on one piece of prior art that Apple has identified) are located in the Northern District of California. (Dkt. No. 20 at 8.)

6

In response, NetTech alleges that it keeps all of its records—including documents "relevant to damages"—in its headquarters in Marshall. (Dkt. No. 33 at 7.) In addition, NetTech alleges that Mr. Scahill frequently travels to Marshall and thus it is far more convenient for him to travel to this District than to fly to the Northern District of California. (*Id*.)

Considering the facts of this case, the Court finds that this factor is in favor of transferring to the Northern District of California. However, given the realities of today's digital world where what once would have been boxes and boxes of documents can now be delivered with the click of a mouse this factor's weight is at most minimal. No one seriously doubts that Apple's relevant documents are digitized and readily deliverable by electronic means.

### b) *The Availability of a Compulsory Process to Secure the Attendance of Witnesses*

The second private factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by court order. *In re Volkswagen II*, 545 F.3d at 216. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No. 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010).

The only third-parties identified as likely witnesses whose susceptibility to being subpoenaed to appear at trial are the inventor (Mr. Wynn), his prosecuting attorney (Mr. Moskowitz), and two inventors named on a different patent that Apple has identified as "relevant prior art" (Mr. Christopher B. Wright and Mr. Stephen Bristow). (Dkt. No. 20 at 4–5.) Mr. Moskowitz resides in New York, which is outside the subpoena range of both the Eastern District of Texas and the Northern District of California. (*Id*. at 4.) However, if he were willing to appear

voluntarily, doing so from New York makes the Eastern District of Texas obviously more convenient.

Mr. Wynn is within the subpoena range of the Northern District of California, but a clear representation has been made to the Court that he is willing to appear in the Eastern District of Texas voluntarily for trial. (Dkt. No. 33 at 3.) Given this representation, the fact that he is subject to subpoena power in the Northern District of California and not in this District is neutralized. *See C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-cv-00079, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019).

The named inventors on the prior art identified by Apple are located within the subpoena range of the Northern District of California. (Dkt. No. 20 at 9.) However, there is no clear indication that these witnesses will be relevant merely because they authored prior art and Apple provided nothing further to show their relevance.[5] Nor is there any clear indication that these witnesses would be unwilling to travel to the Eastern District of Texas. As such, Apple has not shown that the availability of a compulsory process to compel these two individuals to appear in this case will be of import. *See Arielle, Inc. v. Monster Cable Prod., Inc.*, No. 2:06-cv-382, 2007 WL 951639, at *2 (E.D. Tex. Mar. 26, 2007) ("The moving party must 'specifically identify key witnesses and outline the substance of their testimony.'") (*quoting Hupp v. Siroflex of America, Inc.*, 848 F.Supp. 744, 749 (S.D.Tex.1994); *see also* 15 ARTHUR R. WRIGHT, FEDERAL PRACTICE & PROCEDURE § 3851 (4th ed. 2019). Consequently, the Court finds that this factor is neutral.

---

[5] Having filed no answer in this case, Apple has yet to formally claim such prior art as part of its invalidity contentions. Given the early nature of these assertions, it is far from certain that such prior art will be ultimately relevant to any invalidity case which Apple might assert in the future.

*c) Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (*quoting Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 1343 (*citing Volkswagen II*, 545 F.3d at 317). Furthermore, in analyzing this factor, clearly more weight is properly given to non-party witnesses than to party witnesses. *AGIS Software Dev. LLC v. Apple, Inc.*, No. 2:17-cv-00516-JRG, 2018 WL 2721826, at *7 (E.D. Tex. June 6, 2018) (*citing Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012)).

Considering the facts of this case, the Court finds that the bulk of the specific persons identified by Apple, while living in the Northern District of California, are each among its employees, and thus subject to its control. (Dkt. No. 20 at 2–3.) In addition, Apple has identified no willing third-party individuals.[6] The only named willing third-party at this stage in this case is Mr Wynn, the inventor of the asserted patent, whom NetTech has represented is willing to travel to this District.[7] (Dkt. No. 33 at 3.) On the other hand, NetTech has named no employees based within this District. The only employee that NetTech has identified is Mr. Scahill who travels to this District "often" but resides in New York. (*Id*. at 2.) The Court notes that almost all of the

---

[6] Apple has identified third-party witnesses. However, aside from the inventor of the Asserted Patent who has expressed he is willing to travel to this District, Apple has not represented that the other third-parties are willing or unwilling to travel but has merely named them. The Court should not be left to guess whether or not a third-party inventor is willing to travel as necessary to testify. However, if it must guess, the Court resolves such factual uncertainty in favor of the non-movant.

[7] Given that its source is from officers of this Court, the Court properly relies on this representation by NetTech's counsel.

witnesses Apple identifies are willing or controlable party witnesses. As a result, this factor weighs only slightly in favor of transfer. *See AGIS Software*, 2018 WL 2721826, at *7 (holding that in analyzing this factor more weight is given to non-party witnesses than to party witnesses); *see also J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, 6:08-cv-00262, 2008 WL 5378010, *3 (E.D. Tex. Dec. 23, 2008); *Carr v. Ensco Offshore Co.*, G-06-629, 2007 WL 760367, *2 (S.D. Tex. Mar. 8, 2007); 15 ARTHUR R. WRIGHT, FEDERAL PRACTICE & PROCEDURE § 3851 (4th ed. 2019) ("[T]he convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial.").

### d) Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 F. App'x. 295 (Fed. Cir. 2011). Considering the facts of this case, the Court finds that this factor is neutral.

### 2) Public Transfer Factors

### a) Administrative Difficulties Flowing from Court Congestion

The median time to trial in patent cases is shorter in this District than in the Northern District of California. (Dkt. No. 20 at 12.) Accordingly, the Court finds that this factor weighs against transfer.

### b) Local Interest in Having Localized Interests Decided at Home

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371

F.3d at 206. Local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318. Considering the location of both parties and the facts, the Court finds that this factor is neutral.

### c) Familiarity of the Forum with Governing Law and Avoidance of Unnecessary Conflicts of Law

Both parties agree that the last two factors are neutral. (Dkt. No. 20 at 12; Dkt. No. 33 at 13.) Accordingly, the Court finds that these two remaining factors are neutral.

### 3) Weighing of the Factors

In view of the foregoing factors, the Court must determine whether the Northern District of California is "clearly more convenient" than the Eastern District of Texas. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors militating against transfer. *In re Radmax*, 720 F.3d 285, 290 n.8 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Instead, the Court must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient." *See id.* Where the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. While this Court does not hold that "clearly more convenient" is equal to "clear and convincing," a movant must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning. *See id.* When carefully applying the convenience factors and the related factual arguments in each unique case, courts should be careful not to lose sight of the plaintiff's choice

of forum and its historical significance in our jurisprudence. *Id.* ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."). Having weighed the foregoing factors, the Court concludes that the Northern District of California is not "clearly more convenient."

**IV. CONCLUSION**

In conclusion, considering the weight of the factors and the facts of this case, the Court is of the opinion that Apple's Motion to Transfer Venue Under 29 U.S.C. § 1404(a) (Dkt. No. 20) should be and hereby is **DENIED**. Further, in light of the above holding, Apple's Unopposed Motion for Oral Hearing (Dkt. No. 50) is hereby **DENIED**.

**So ORDERED and SIGNED this 27th day of November, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE